UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRENNAN CENTER FOR JUSTICE, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No. 16-1609 (ABJ) |
| DEPARTMENT OF HOMELAND SECURITY, | ) ) ) ) |
| Defendant. | ) ) ) |

**DECLARATION OF FERNANDO PINEIRO
IN SUPPORT OF THE UNITED STATES DEPARTMENT OF HOMELAND
SECURITY'S MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Deputy Freedom of Information Act (FOIA) Officer at the United States Immigration and Customs Enforcement (ICE) FOIA Office (ICE FOIA Office). I have held this position since December 29, 2013. Prior to this position I was the FOIA Officer for three years at the Office for Civil Rights and Civil Liberties (CRCL) at the United States Department of Homeland Security (DHS).

2. The ICE FOIA Office is responsible for processing and responding to all Freedom of Information Act (FOIA) requests received by ICE, pursuant to 5 U.S.C. § 552 and Privacy Act requests, pursuant to 5 U.S.C. § 552a.

3. As the Deputy FOIA Officer, my official duties include the general management, oversight, and supervision of the ICE FOIA Office, which is responsible for the receipt, processing, and response to all FOIA and Privacy Act requests received at ICE. In that capacity,

I manage and supervise a staff of Paralegal Specialists, who report to me regarding the processing of FOIA and Privacy Act requests received by ICE. Due to my experience and the nature of my official duties, I am familiar with ICE's procedures for responding to requests for information pursuant to provisions of the FOIA and the Privacy Act. In particular, I am familiar with ICE's processing of the FOIA request dated June 23, 2015, that the Brennan Center for Justice at New York University School of Law submitted to ICE, which is the subject of this litigation ("Plaintiff's FOIA Request").

4. I make this declaration in my official capacity in support of Defendant's motion for summary judgment in the above-captioned action. The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

5. This declaration provides a description of how ICE received Plaintiff's FOIA Request, how the ICE FOIA Office processed Plaintiff's FOIA Request, how the ICE FOIA Office searched for records responsive to Plaintiff's FOIA Request, and how the ICE FOIA Office responded to Plaintiff's FOIA Request.

6. In addition, in accordance with the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this declaration provides an explanation of the basis for withholding portions of the requested information pursuant to Exemption (b)(5) of the FOIA. Plaintiffs are only challenging Defendant's application of FOIA Exemption (b)(5) to agency records and have conceded to the use of other Exemptions to the records. *See* Dkt. No. 11 (June 26, 2017 Joint Status Report). Therefore, this declaration and Defendant's *Vaughn* Index only address its use of FOIA Exemption (b)(5). **ICE's Vaughn Index is attached hereto as Exhibit 1.**

## II. PROCEDURAL HISTORY OF PLAINTIFF'S FOIA REQUEST AND THE INSTANT LITIGATION

7. Plaintiff submitted a FOIA request dated June 23, 2015 to ICE FOIA. **A true and complete copy of Plaintiff's FOIA Request is attached hereto as Exhibit 2.**

8. Plaintiff's FOIA Request sought the following:

    1. Any records reflecting, setting forth, establishing, or directly or indirectly indicating the number of immigration cases designated as requiring special procedures pursuant to the Creppy Memorandum for the time period September 11, 2001 until the present, or any shorter time period therein.

    2. Any records reflecting, setting forth, describing, or establishing any directive, order, memorandum, or guidance (other than the Creppy Memorandum) issued by the Department of Justice, EOIR, INS/DHS, or any other relevant department, component, or agency between 1990 and the present regarding special security proceedings and/or restrictions on public access to be applied in cases involving classified information and/or national security concerns.

    3. Any records reflecting, setting forth, establishing, or directly or indirectly indicating the number of immigration cases designated as requiring special procedures pursuant to any directive, order, memorandum, or guidance described in Request #2.

    4. Any records reflecting, setting forth, establishing, or directly or indirectly indicating –

        (a) the number of protective orders sought by the government, and/or the number of cases in which protective orders were sought;

        (b) the number of protective orders issued, and/or the number of cases in which protective orders were issued, pursuant to 8 C.F.R. § 1003.46(a) or its predecessor regulation(s) during the time period 1990 to the present, or any shorter time period therein.

    5. Any records reflecting, setting forth, establishing, or directly or indirectly indicating the number of protective orders described in Request #4 that were (a) sought or (b) issued on national security grounds.

    6. Any motion for a protective order filed under 8 C.F.R. § 1003.46(b) or its predecessor regulation(s) during the time period 1990 to the

present, or any shorter time period therein, where the request was based in whole or in part on national security considerations.

7. Any protective order issued under 8 C.F.R. § 1003.46(b) or its predecessor regulation(s) during the time period 1990 to the present, or any shorter time period therein, where the order was based in whole or in part on national security considerations.

8. Any records reflecting, setting forth, establishing, or directly or indirectly indicating the number of cases in which –

   (a) the government requested that proceedings be closed to the public;

   (b) proceedings were closed to the public, pursuant to 8 C.F.R. 1003.27(d) or its predecessor regulation(s) during the time period 1990 to the present, or any shorter time period therein.

9. Any records reflecting, setting forth, establishing, or directly or indirectly indicating the number of cases described in Request #6 involving proceedings (a) that the government sought to have closed or (b) that were closed on national security grounds.

10. Any records reflecting, setting forth, establishing, or directly or indirectly indicating the number of written or oral "decisions," as the term is used in 8 C.F.R. § 1003.37, that were subject to or encompassed within a protective order issued under 8 C.F.R. § 1003.46(a) or its predecessor regulation(s) during the time period 1990 to the present, or any shorter time period therein.

11. Any records reflecting, setting forth, establishing, or directly or indirectly indicating the number of decisions described in Request #10 in which the protective order encompassing the decision was issued on national security grounds.

12. Any records reflecting, setting forth, describing, establishing, or directly or indirectly indicating the number of instances in which the BIA withheld or was requested by the government to withhold decisions, opinions, or rulings from publication or from public access on national security grounds during the time period 1990 until the present, or any shorter time period therein.

13. Any records relating to, discussing, or memorializing the withholding of, or government requests to withhold, BIA decisions, opinions, or rulings from publication or from public access on national security

4

        grounds during the time period 1990 until the present, or any shorter time period therein.

9. By letter dated July 10, 2015, the ICE FOIA Office acknowledged receipt of the Plaintiff's FOIA Request and assigned it ICE FOIA case number 2015-ICFO-87424. The July 10, 2015 letter also stated that upon initial review, the ICE FOIA Office determined that the information sought was under the purview of the Executive Office for Immigration Review (EOIR), a Department of Justice (DOJ) component, and that the request was being referred to the FOIA Officer for EOIR for processing and direct response to Plaintiff.  **A true and complete copy of the July 10, 2015 letter is attached hereto as Exhibit 3.**

10. By letter dated August 4, 2015, Plaintiff appealed ICE's determination to close Plaintiff's FOIA Request without conducting a search and transferring the request to EOIR.  **A true and complete copy of the August 4, 2015 letter is attached hereto as Exhibit 4.**

11. By letter dated August 19, 2015, ICE's Office of the Principal Legal Advisor (OPLA) acknowledged receipt of Plaintiff's appeal of ICE's July 10, 2015 response, and assigned it appeal tracking number 2015-ICAP-00641.  **A true and complete copy of the August 19, 2015 letter is attached hereto as Exhibit 5.**

12. By letter dated September 16, 2015, OPLA responded to Plaintiff's appeal and informed Plaintiff that ICE was remanding the appeal to the ICE FOIA Office for re-processing and re-tasking to the appropriate office(s) to conduct a search to obtain any responsive documents.  **A true and complete copy of the September 16, 2015 appeal response is attached hereto as Exhibit 6.**

13. By letter dated November 10, 2015, ICE responded to Plaintiff's FOIA Request, and informed Plaintiff that a search of the ICE Enforcement and Removal Operations (ERO) and OPLA offices for records produced 106 pages that were responsive to Plaintiff's FOIA Request.

The letter also informed Plaintiff that 11 pages were being released in their entirety and portions of 95 pages were being withheld pursuant to Exemptions (b)(5), (b)(6), (b)(7)(C), (b)(7)(E), and (b)(7)(F) of the FOIA.  **A true and complete copy of the November 10, 2015 letter is attached hereto as Exhibit 7.**

14. By letter dated November 16, 2015, Plaintiff filed an appeal of ICE's November 10, 2015 response, challenging both ICE's withholdings applied to the records and the adequacy of ICE's search.  **A true and complete copy of the November 16, 2015 letter is attached hereto as Exhibit 8.**

15. By letter dated December 3, 2015, OPLA acknowledged receipt of Plaintiff's appeal of ICE's November 10, 2015 response, and assigned it appeal tracking number 2016-ICAP-00168.  **A true and complete copy of the December 3, 2015 letter is attached hereto as Exhibit 9.**

16. By letter dated December 24, 2015, OPLA responded to Plaintiff's appeal and informed Plaintiff that it was remanding the appeal to the ICE FOIA Office so that additional non-exempt information could be released as well as a new search, or modification to the existing search, could be made.  The letter also informed Plaintiff that OPLA was remanding the appeal to the ICE FOIA Office for reprocessing and re-tasking to appropriate office(s) to obtain any responsive documents.  **A true and complete copy of the December 24, 2015 appeal response is attached hereto as Exhibit 10.**

17. By letter dated January 20, 2016, ICE responded to Plaintiff's FOIA Request, and informed Plaintiff that a search of OPLA for records produced 27 pages that were responsive to Plaintiff's FOIA Request.  The letter also informed Plaintiff that portions of 27 pages were being

withheld pursuant to Exemptions (b)(6) and (b)(7)(C) of the FOIA.  **A true and complete copy of the January 20, 2016 letter is attached hereto as Exhibit 11.**

18.  By letter dated January 21, 2016, Plaintiff filed an appeal of ICE's January 20, 2016 response, challenging the adequacy of ICE's search.  **A true and complete copy of the January 21, 2016 letter is attached hereto as Exhibit 12.**

19.  By letter dated February 22, 2016, OPLA acknowledged receipt of Plaintiff's appeal of ICE's January 20, 2016 response, and assigned it appeal tracking number 2016-ICAP-00337.  **A true and complete copy of the February 22, 2016 letter is attached hereto as Exhibit 13.**

20.  By letter dated March 17, 2016, OPLA responded to Plaintiff's appeal and informed Plaintiff that OPLA was remanding the appeal to the ICE FOIA Office for reprocessing and re-tasking to appropriate office(s) so that a new search or modification to an existing search could be made.  **A true and complete copy of the March 17, 2016 appeal response is attached hereto as Exhibit 14.**

21.  By letter dated May 2, 2016, ICE responded to Plaintiff's FOIA Request, and informed Plaintiff that ICE conducted a search of OPLA for records responsive to the request and that no additional responsive records were found.  **A true and complete copy of the May 2, 2016 letter is attached hereto as Exhibit 15.**

22.  By letter dated June 30, 2016, Plaintiff filed an appeal of ICE's May 2, 2016 response, challenging the adequacy of ICE's search.  **A true and complete copy of the June 30, 2016 letter is attached hereto as Exhibit 16.**

23. By letter dated July 21, 2016, OPLA acknowledged receipt of Plaintiff's appeal of ICE's May 2, 2016 response, and assigned it appeal tracking number 2016-ICAP-00582. **A true and complete copy of the July 21, 2016 letter is attached hereto as Exhibit 17.**

24. By letter dated July 29, 2016, OPLA responded to Plaintiff's appeal and informed Plaintiff that OPLA was remanding the appeal to the ICE FOIA Office for reprocessing and re-tasking to appropriate office(s) so that a new search or modification to an existing search could be made. **A true and complete copy of the July 29, 2016 appeal response is attached hereto as Exhibit 18.**

25. On August 8, 2016, Plaintiff commenced this lawsuit in the United States District Court for the District of Columbia challenging ICE's response to its FOIA Request. *See* Dkt. No. 1. As a result of the intervening litigation and in accordance with the ICE FOIA Office's standard operating procedures, the ICE FOIA Office administratively closed Plaintiff's open request.

26. On October 27, 2016, Defendant filed an Answer to Plaintiff's Complaint. *See* Dkt. No. 5.

27. On November 28, 2016, the parties filed a Joint Status Report with the Court. In the Joint Status Report, Defendant agreed to produce, on a rolling basis beginning in December 2016, approximately 350 pages of responsive records per month. *See* Dkt. No. 7.

28. By letter dated December 23, 2016, the ICE FOIA Office produced five hundred and eighteen (518) pages located by a search of ICE's Enforcement and Removals Operations (ERO) as well as The Office of the Principal Legal Advisor (OPLA). Out of the 518 pages, 283 pages were sent for consultation to outside agencies and were marked "Referred to Another Agency/Component." Fifteen (15) pages originated with an outside agency and were referred to

that agency for direct response to the Plaintiff.  Portions of the documents produced were withheld pursuant to Exemptions 5, 6, 7(C), and 7(E) of the FOIA.  **A true and correct copy of the cover letter that accompanied the December 23, 2016, 2016 release is attached to this Declaration as Exhibit 19**.

29. By letter dated January 18, 2017, the ICE FOIA Office produced five hundred thirty-two (532) pages located by a search of ICE's Office of the Principal Legal Advisor (OPLA). Out of the 532 pages, 2 pages were sent for consultation to outside agencies and were marked "Referred to Another Agency/Component."  Sixteen (16) pages originated with an outside agency and were referred that agency for processing and direct response to the Plaintiff. Portions of the documents produced were withheld pursuant to Exemptions 5, 6, 7(C), and 7(E) of the FOIA.  **A true and correct copy of the cover letter that accompanied the January 18, 2017 release is attached to this Declaration as Exhibit 20**.

30. By letter dated February 14, 2017, the ICE FOIA Office produced four hundred and ten (410) pages located by a search of ICE's Office of the Principal Legal Advisor (OPLA). Portions of these documents were withheld pursuant to Exemptions 5, 6, 7(C), and 7(E) of the FOIA.  **A true and correct copy of the cover letter that accompanied the February 14, 2017 release is attached to this Declaration as Exhibit 21**.  By letter dated March 16, 2017, the ICE FOIA Office responded to the Plaintiff, and produced four hundred and eleven (411) pages located by a search of ICE's Office of the Principal Legal Advisor (OPLA). Portions of these documents were withheld pursuant to Exemptions 5, 6, 7(C), and 7(E) of the FOIA.  **A true and correct copy of the cover letter that accompanied the March 16, 2017 release is attached to this Declaration as Exhibit 22**.

31. On April 26, 2017, the parties submitted a Joint Status Report to the Court explaining, among other things, that the Defendant located approximately 290 pages of

documents that required review by outside agencies before they could be produced to Plaintiff. *See* Dkt. No. 10.

32. On May 3, 2017, the ICE FOIA Office produced to Plaintiff 16 pages of documents which had been referred to DOJ and advised Plaintiff that portions of those documents were withheld pursuant to Exemptions (b)(5), (b)(6), and (b)(7)(C). **A true and complete copy of the letter that accompanied the production is attached hereto as Exhibit 23.**

33. On June 12, 2017, the ICE FOIA Office produced to Plaintiff 276 pages of documents which had been referred to the Federal Bureau of Investigation and advised Plaintiff that portions of those documents were withheld pursuant to Exemptions (b)(5), (b)(6), and (b)(7)(C). **A true and complete copy of the letter that accompanied the production is attached hereto as Exhibit 24.**

34. On June 26, 2017, the parties submitted a Joint Status Report advising the Court that ICE had completed the processing and release of responsive documents and that Plaintiff intended to challenge the adequacy of ICE's search for responsive records as well as all Exemption 5 claims. *See* Dkt. No. 11.

### III. ICE'S STANDARD PROCEDURE FOR INITIATING SEARCHES IN RESPONSE TO FOIA REQUESTS

35. When the ICE FOIA Office receives a FOIA request, the intake staff evaluates it to determine if it is a proper FOIA request per DHS FOIA regulation 6 C.F.R. § 5.3. Generally, a FOIA request is considered proper and in compliance with DHS regulations if it reasonably describes the records sought and the records are under the purview of ICE.

36. If a FOIA request does not reasonably describe the records sought, the ICE FOIA Office will seek clarification from the requester. If the requested information is under the

purview of a DHS component other than ICE, the ICE FOIA Office will refer the request to the appropriate DHS component for processing and direct response to the requester.  If the FOIA request seeks records under the purview of a government agency other than DHS, ICE FOIA informs the requester to contact the other government agency directly and ICE FOIA administratively closes the FOIA request.

37.     Proper FOIA requests are entered into a database known as FOIAXpress and assigned a case tracking number.  Based upon the requester's description of the records being sought and ICE FOIA's knowledge of the various program offices' missions, the ICE FOIA Office identifies the program office(s) likely to possess responsive records and tasks the appropriate program office(s) to conduct the necessary searches.

38.     ICE records are maintained by leadership offices and/or within ICE directorates, namely, Enforcement and Removal Operations (ERO), Homeland Security Investigations (HSI), and/or Management and Administration (M&A).  Program offices within the leadership office and the ICE directorates are staffed with a designated point of contact (POC) who is the primary person responsible for communications between that program office and the ICE FOIA Office.  Each POC is a person with detailed knowledge about the operations of his/her particular program office.

39.     Upon receipt of a proper FOIA request, the ICE FOIA Office will identify which program offices, based on their experience and knowledge of ICE's program offices, within ICE are reasonably likely to possess records responsive to that request, if any, and initiates searches within those program offices.  Once the ICE FOIA Office determines the appropriate program offices for a given request, it provides the POCs within each of those program offices with a copy of the FOIA request and instructs them to conduct a search for responsive records.  The

POCs then review the FOIA request, along with any case-specific instructions that may have been provided, and based on their experience and knowledge of their program office practices and activities, forward the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any. In conformity with the ICE FOIA Office's instructions, the individuals and component offices are directed to conduct searches of their file systems, including both paper files and electronic files, which in their judgment, based on their knowledge of the manner in which they routinely keep records, would most likely be the files to contain responsive documents. Once those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn, provides the records to the ICE FOIA Office. The ICE FOIA Office then reviews the collected records for responsiveness and application of appropriate FOIA Exemptions.

40. ICE employees maintain records in several ways. ICE program offices use various systems to maintain records, such as investigative files, records regarding the operation of ICE programs, and administrative records. ICE employees may store electronic records on their individual computer hard drives, their program office's shared drive (if the office uses one), DVDs, CDs, and/or USB storage devices. The determination of whether or not these electronic locations must be searched in response to a particular FOIA tasking, as well as how to conduct any necessary searches, is necessarily based on the manner in which the employee maintains his/her files.

41. Additionally, all ICE employees have access to email. ICE uses the Microsoft Outlook email system. Each ICE employee stores his/her files in the way that works best for that particular employee. ICE employees use various methods to store their Microsoft Outlook email

files: for example, some archive their files monthly, without separating by subject; others archive their email by topic or by program; still others may create PST files of their emails and store them on their hard drive or shared drive.

42. Records received by the ICE FOIA Office from the program office POCs are assigned to a FOIA processor who makes a determination whether the records are responsive to the FOIA request, or not. If the records are responsive, the FOIA processor will redact information pursuant to the FOIA or the Privacy Act, as appropriate, while simultaneously ensuring that all reasonably segregated non-exempt information is released.

43. Frequently, the ICE FOIA Office must coordinate between multiple program offices to ensure the program office records are properly redacted and information is correctly segregated. Once the ICE FOIA Office completes its coordination efforts and all responsive records have been processed, the ICE FOIA Office releases the responsive records to the requester.

## IV. DESCRIPTION OF PROGRAM OFFICES TASKED WITH SEARCHING FOR RECORDS IN RESPONSE TO PLAINTIFF'S FOIA REQUEST

44. ICE is the principal investigative arm of DHS and the second largest investigative agency in the federal government. Created in 2003 through a merger of the investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization Service, ICE now employs more than 20,000 people in offices in every state and in 48 foreign countries.

45. The ICE FOIA Office determined that because of the subject matter of Plaintiff's FOIA Request, ERO and OPLA were the offices likely to have responsive records. The ICE FOIA Office instructed these specific offices to conduct a comprehensive search for records and

to provide all records located during that search to the ICE FOIA Office for review and processing.

46. ERO oversees programs and conducts operations to identify and apprehend removable aliens, to detain these individuals when necessary, and to remove illegal aliens from the United States. ERO manages all logistical aspects of the removal process, including domestic transportation, detention, alternatives to detention programs, bond management, and supervised release.

47. OPLA provides a full range of legal counsel and services to all ICE offices and programs. OPLA's primary responsibilities include, *inter alia*, representing DHS before the EOIR in all exclusion, deportation, and removal proceedings; arguing administrative appeals before the Board of Immigration Appeals, providing direction and support to U.S. Attorney's Offices nationwide; counseling ICE clients on removal order reinstatements, administrative removal orders, and expedited removals; reviewing legislative and regulatory proposals; and providing legal training and ethics guidance to all ICE personnel. OPLA is the largest legal program in DHS, with over 1,200 attorneys providing legal advice, training, and services in cases related to ICE's mission. In addition to its headquarters in Washington, D.C., OPLA has 26 Offices of Chief Counsel throughout the United States which work under the Field Legal Operations ("FLO") Division.

## V.   ERO'S SEARCH AND RESPONSE TO PLAINTIFF'S FOIA REQUEST

48. On September 21, 2015, the ICE FOIA Office forwarded Plaintiff's FOIA Request to ERO, instructing them to search for and provide the ICE FOIA Office with all documentation concerning the request. When ERO receives a FOIA tasking from the ICE FOIA Office, the request is submitted to ERO's Information Disclosure Unit (IDU). POCs in IDU review the substance of the request. Based on subject matter expertise and knowledge of the

program offices' activities within ERO, IDU forwards the FOIA request to specific individuals and component offices, and directs specific employees to conduct searches of their file systems (including both paper and electronic files) which in their judgment, based on their knowledge of the manner in which they routinely keep records, would be reasonably likely to have responsive records, if any.  The employees exercise discretion, based on their operational knowledge and subject matter expertise, in choosing the specific search terms utilized to ascertain whether or not potentially responsive records exist.  Once searches are completed, the individuals and component offices provide any potentially responsive documents to the IDU POC, who in turn provides the records to the ICE FOIA Office.

49. Here, ERO IDU tasked the following ERO components to conduct searches pursuant to the FOIA request:  the Executive Associate Director's Office (EAD), Law Enforcement Systems and Analysis (LESA), Field Operations, ERO Policy, Custody Management, and the Targeting Operations Division.  For the EAD, both the Executive Associate Director and the Deputy Executive Associate Director conducted searches.  For the LESA, the component Chief of Staff conducted the search.  For Field Operations, a Unit Chief conducted the search.  For ERO Policy, a Policy Analyst conducted the search.  For Custody Management, the component Chief of Staff concluded that the records requested were not within Custody Management's purview.  And for the Targeting Operations Division, a Unit Chief and a Supervisory Detention and Deportation Officer conducted searches.  These individuals conducted their searches using search terms such as "National Security," "Warrants," "Sensitive," "Classified," "8 C.F.R. 1003.46(a)," "Creppy," "Creppy Memo," "Special Procedures," "Protective Orders," " 8 C.F.R. 1003.27(d)," "8 C.F.R 1003.46(f)," "8 C.F.R. 1003.37," and "8 C.F.R. 1003.46(b)."  On October 28, 2015, ERO IDU responded to the search

tracker and submitted records responsive to item 2 of Plaintiff's FOIA Request. ERO IDU submitted a negative response (indicating no responsive records were located) for the rest of the categories identified in Plaintiff's FOIA Request. The records located by ERO were forwarded to the ICE FOIA Office for processing and released to Plaintiff.

### VI. OPLA'S SEARCH AND RESPONSE TO PLAINTIFF'S FOIA REQUEST

50. On September 21, 2015, the ICE FOIA Office forwarded Plaintiff's FOIA Request to OPLA instructing OPLA to search for and provide the ICE FOIA Office with all documentation responsive to the request. Upon receipt of the FOIA request, a POC within OPLA reviewed the substance of the request and, based on his experience and knowledge of the office's practices and activities, tasked the Immigration Law Practice Division (ILPD) and the National Security Law Section (NSLS), to conduct a search for responsive documents.

51. On October 30, 2015, OPLA responded to the search tracker and submitted records responsive to Plaintiff's FOIA Request. Specifically, an Associate Legal Advisor in NSLS and the Section Chief of ILPD searched their paper files, email records, computer hard drives, and share drives using search terms such as "1003.46." The records located by OPLA were forwarded to the ICE FOIA Office for processing and released to Plaintiff. After Plaintiff's November 2015 appeal and ICE's subsequent remand in December 2015, an Associate Legal Advisor in ILPD conducted a manual search of paper files, document by document, for records responsive to the request. The records located by OPLA were forwarded to the ICE FOIA Office for processing on January 14, 2016, and released to Plaintiff.

52. After a litigation review, on November 1, 2016, OPLA determined that additional searches for responsive records should be conducted. Accordingly, OPLA tasked the OPLA Field Legal Operations (FLO) and the 26 Offices of Chief Counsel (OCC) throughout the United States to conduct searches for records responsive to Plaintiff's FOIA request. FLO was tasked

because it is the component within ICE that is responsible for representing the U.S. government in exclusion, deportation, and removal proceedings before EOIR. Also, in the process of litigating cases, the attorneys who work within each OCC have access to individuals' A-files, which could potentially contain copies of protective orders and motions. The OPLA POC directed all OCCs within FLO to conduct a search in response to Plaintiff's FOIA Request. Each OCC has an attorney designated as a national security law specialist/expert and/or POC. The attorneys within each OCC who were the national security law specialists/experts or POCs were tasked, as they would be the individuals who were likely to have records responsive to Plaintiff's FOIA Request. The national security law specialist/expert or POC would have been the individual who would have moved for entry of a protective order when litigating a case warranting such an order.

53. On November 15, 2016, FLO responded to the search tracker and submitted records responsive to Plaintiff's FOIA Request. Specifically, the national security law POCs assigned for searching within FLO searched their systems of record, email records, computer hard drives, share drives and paper files using search terms such as "Protective Order," "protective," "closed," "1003.27," "8 C.F.R. 1003.46(a)," "1003.46," "classified," "special interest," "national security," and "closed hearing." The records located by FLO were forwarded to the ICE FOIA Office for processing and released to Plaintiff. Within ILPD, two Associate Legal Advisors also conducted additional searches in November 2016 of their computer and paper files for responsive records using such terms as "protective order," "protection order," "public access, and "classified." Within NSLS, four Associate Legal Advisors, a Deputy Chief, and the Chief of NSLS conducted additional searches of their paper and computer files for responsive records using such terms as "protective order," "1003.46," "1003.27," "Creppy,"

"protective," and "closed hearing." The records located by ILPD and NSLS were forwarded to the ICE FOIA Office for processing and released to Plaintiff.

### VII. DESCRIPTION OF FOIA EXEMPTION 5 WITHHOLDINGS APPLIED TO RECORDS PROVIDED TO PLAINTIFF

54. Exemption 5 of the FOIA allows the withholding of inter- or intra-agency records that are normally privileged in the civil discovery context. Pursuant to Exemption (b)(5), the three most frequently invoked privileges are the deliberative process privilege, the attorney work-product privilege, and the attorney-client privilege.

55. As described on the accompanying *Vaughn* Index, ICE applied FOIA Exemption (b)(5) to protect from disclosure documentation subject to the deliberative process privilege, the attorney-client privilege, and the attorney work-product privilege.[1]

56. ICE withheld internal discussions and deliberations between and amongst OPLA regarding draft policy and guidance related to the issuance of protective orders and motions. The contents of these discussions and deliberations are non-final and pre-decisional in nature; these communications contemplate the appropriate response regarding enforcement actions and legal proceedings. The deliberative process privilege protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel. This would result in a chilling effect on intra- and inter-agency communications. ICE employees must be able to discuss proposed agency action freely. Further, if draft, un-finalized information

---

[1] In its discretion, ICE has released two documents that were previously withheld in full.

regarding agency policies and enforcement actions were released, the public could potentially become confused regarding ICE's mission and enforcement activities.

57. The attorney-client privilege was applied when the documents contain confidential communications between an attorney and his/her clients relating to a legal matter for which the client has sought professional advice. In the governmental context, the client is the agency and the agency lawyers are its attorneys. Attorney-client communications are shielded from disclosure in order to encourage a full and frank discussion between the client and his legal advisor. The attorney-client privilege recognizes that sound legal advice or advocacy depends upon a lawyer being fully informed by his client. If these communications, as covered by the attorney-client privilege, were disclosed, this could result in a chilling effect on interactions and communications between agency employees and their legal counsel.

58. The attorney-work product privilege was applied when the documents and other memoranda were prepared by an attorney in contemplation of litigation. The purpose of the attorney-work product privilege is to protect and insulate an attorney's preparation from scrutiny. The doctrine is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an eye toward litigation, free from unnecessary intrusion by his adversaries.

### VIII. SEGREGABILITY

59. 5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of portions which are exempt."

60. My staff, under my supervision, has reviewed each record line-by-line to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.

61. With respect to the records that were released in part, all information not exempted from disclosure pursuant to the FOIA as specified above, was correctly segregated and non-exempt portions were released.

## IX. JURAT CLAUSE

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.  Signed this 2nd day of October 2017.

_____
Fernando Pineiro, Deputy FOIA Officer
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009